UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MARCELL HAYNES,                                              :

                    Petitioner,              :      **MEMORANDUM DECISION**

              - v -                          :      19-CV-1814 (DC)

ATTORNEY GENERAL OF NEW YORK,          :

                  Respondent.            :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

APPEARANCES:          MARCELL HAYNES
                      Petitioner *Pro Se*
                      DIN 16A3060
                      Eastern NY Correctional Facility
                      P.O. Box 338
                      Napanoch, NY 12458

                      ANNE T. DONNELLY, Esq.
                      District Attorney
                      Nassau County
                      By:    Mary Faldich, Esq.
                             Assistant District Attorney
                      262 Old Country Road
                      Mineola, NY 11501
                             Attorney for Respondent

CHIN, Circuit Judge:

        On July 11, 2016, following a jury trial, Marcell Haynes was convicted in

the Supreme Court of the State of New York, Nassau County (Delligatti, *J.*), of second-

degree criminal possession of a weapon and criminal possession of a firearm.  Haynes

was sentenced, as a second violent felony offender, to an aggregate term of ten years' imprisonment and seven years of post-release supervision.  *See* Dkt. 5 at 5-6.  His convictions were affirmed by the Appellate Division, Second Department, *People v. Haynes*, 77 N.Y.S.3d 640 (2d Dep't 2018) ("*Haynes I*"), and the New York Court of Appeals denied leave to appeal, *People v. Haynes*, 115 N.E.3d 635 (N.Y. 2018) (DiFiore, J.) ("*Haynes II*").

On March 29, 2019, Haynes petitioned this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  *See* Dkt. 1.   Represented by the Nassau County District Attorney's Office, respondent Attorney General of the State of New York opposed the petition on May 24, 2019, and Haynes filed his reply on August 22, 2019.  *See* Dkt. 5, 11.  On February 3, 2023, the case was reassigned to the undersigned.

For the reasons set forth below, Haynes's petition is denied.

## BACKGROUND

### I.    *The Facts*

The evidence at trial established the following:

On November 13, 2014, plainclothes police officers Nicholas Collins and Carl Feil were patrolling the Inwood area of Nassau County in an unmarked car when they observed a vehicle driven by Joshua Lindsay fail to signal while making a turn, and noticed that neither Lindsay nor Haynes wore a seatbelt.  Collins and Feil stopped the vehicle at approximately 3:42 p.m., approached the car, and asked through the open

window why Haynes, sitting in the passenger seat, was not wearing his seatbelt. When Haynes attempted to secure his seatbelt by reaching with his left arm across his body, his jacket moved, allowing Collins to observe the brown handle and hammer of a handgun located in the center-right of Haynes's waistband. Collins then ordered Haynes out of the vehicle, secured the .38 caliber revolver, placed him in handcuffs, and transported him to the Fourth Detective Squad. Dkt. 8-1 at 6-14; 18-19.

There, Detective Rhubens Toussaint examined the recovered gun and determined that it was loaded. At approximately 6:24 p.m., Detective Toussaint met Haynes in an interview room, where Haynes was seated on a bench with one hand cuffed to the wall. *Id.* at 30-34. Detective Toussaint read from a department-issued Voluntary Disclosure Form, on which he wrote Haynes's name and which stated:

> Before asking you any questions you should understand you
> have the right to remain silent and that any statements you
> make may be used against you in court. Also, you have the
> right to talk to a lawyer before answering any questions or
> have a lawyer present at any time. If you cannot afford to
> hire a lawyer, one will be furnished you, if you wish, and
> you have the right to keep silent until you have had a chance
> to talk to a lawyer. Do you understand?

*Id.* at 34; Dkt. 6-1 at 22. Haynes responded "yes," and Detective Toussaint instructed him to write "yes" and initial the form. Detective Toussaint then asked, "Now that I have advised you of your rights, are you willing to answer any questions?" Haynes stated, "No. I'm not going to answer any questions. You guys got me. I had the gun on me. I was on my way home to Far Rockaway. I use it for protection. That's all I'm

going to say." Dkt. 8-1 at 34-35.  Detective Toussaint instructed Haynes to write "no"

and initial the form and he memorialized Haynes's statement in his case file.  *Id.* at 38.

## II.      *Procedural History*

### A.      **State Court Proceedings**

On April 14, 2015, the grand jury indicted Haynes on one count each of

criminal possession of a weapon in the second and fourth degrees and criminal

possession of a firearm, in violation of N.Y. Penal Law §§ 265.03(3), 265.01(1),

265.01-b(1), as well as two counts of criminal possession of a weapon in the third

degree, in violation of N.Y. Penal Law §§ 265.02(1), (5)(ii).  *See* Dkt. 6-1 at 23-25.

Haynes moved before trial to suppress the gun and his statement to

Detective Toussaint.  Dkt. 7 at 8-11.  The trial court held an evidentiary hearing, during

which the People presented the testimony of Officer Collins and Detective Toussaint.

Haynes presented no evidence, but argued that his statement to Detective Toussaint

was made prior to the reading of *Miranda* rights, as the Voluntary Disclosure Form

reflected the statement was made at 5:00 p.m., but Detective Toussaint testified that he

read from the Voluntary Disclosure Form at 6:24 p.m.  Dkt. 8-1 at 37.  Haynes did not

challenge the adequacy of the *Miranda* warnings themselves.  The People argued that

the 5:00 p.m. time noted on the Voluntary Disclosure Form was incorrect; Haynes's

statement was indeed made after Detective Toussaint read the *Miranda* warnings; and,

irrespective of timing, the statement was not the result of interrogation, but instead was spontaneously uttered by Haynes, and was thus admissible. *Id.* at 42-43.

The trial court denied Haynes's motion to suppress, concluding that the gun was admissible because Officer Collins observed it in plain view, and that the statement was admissible because Haynes was "duly advised" of his constitutional rights and, in any event, the statement did not implicate *Miranda* because it was not the product of a custodial interrogation. Dkt. 8-4 at 12; 9-1 at 8.

At trial, Officer Collins testified about the car stop, his observation of the revolver in Haynes's waistband, Haynes's arrest for possession of the handgun, and his seizure of the revolver. Dkt. 7 at 12-14; Dkt. 8-1 at 7-14. Detective Toussaint testified about the Voluntary Disclosure Form and Haynes's statement admitting that he "had the gun on" him. Dkt. 7 at 14-15; Dkt. 8-1 at 34-35. The People also presented expert witness testimony: Detective Steven Mansbart, an expert in latent fingerprint identification, testified that he analyzed the recovered gun and found no latent fingerprints that could be linked to any individual, including Haynes. Dkt. 9-1 at 10-12, 17-20. Daniel Arana, a forensic geneticist and an expert in DNA testing, testified that he did not perform any DNA testing on the gun because the gun was recovered from a known individual, *i.e.*, Haynes, as opposed to being left at the scene. *Id.* at 22-25. Sergeant Wyndell Hurtt, an expert in firearms operability, tested the recovered weapon and found it operable. *Id.* at 28-33.

In his defense, Haynes introduced a document from the Nassau County Sheriff's Department, which indicated what Haynes was wearing on the day of his arrest. Haynes did not testify. Dkt. 9-1 at 33-34.

Prior to charging the jury, defense counsel asked the trial court to avoid defining possession as "dominion and control because that would imply that [Haynes] could be found guilty if there was constructive possession," despite the People pursuing only an actual possession theory of criminal liability. Dkt. 9-2 at 2-3. The trial court rejected this application but permitted defense counsel to pursue the point in summation. *Id.* Indeed, defense counsel stressed in summation that the People failed to prove beyond a reasonable doubt that Haynes physically possessed the gun. *Id.* at 9-11.

In its charge, the trial court instructed the jury that it could not draw any adverse inference from the fact that Haynes did not testify. *Id.* at 38 ("I charge you that the fact that he did not testify is not a factor you may draw any inference unfavorable to the defendant."). The trial court submitted to the jury second- and third-degree criminal possession of a weapon and criminal possession of a firearm. *Id.* at 3. To convict Haynes of criminal possession of a weapon in the second and third degrees, the trial court instructed the jury that it had to find, *inter alia*, that he had "physical possession or otherwise exercise[d] dominion or control over" a loaded firearm. Dkt. 9-3 at 4-5, 6-7. Similarly, to convict for criminal possession of a firearm, the jury was instructed that it had to find that Haynes, *inter alia*, had "physical possession or

6

otherwise exercise[d] dominion or control over" an operable firearm.  *Id.* at 5, 20-21.

Defense counsel took no exception to the jury charge.  *Id.* at 11.

During deliberations, the jury requested, *inter alia*, the legal definition of

"possession."  *Id.* at 14.  The trial court re-read the jury instructions for the three charged

counts, including the previously-read definition of "possession."  *Id.* at 16-21.  Defense

counsel stated on the record that the Court's response to the jury "was proper."  *Id.* at 22.

The jury continued to deliberate, until it requested clarification on the legal definition of

"dominion and control."  *Id.* at 23.  The trial court mostly adopted defense counsel's

proposed instruction but rejected as unnecessary an additional clarification that the jury

may only consider physical possession.  *Id.* at 28-29.  The trial court instructed the jury:

> The People's theory of this case is that the defendant had
> actual possession of the gun.  The dominion and control
> means did the defendant exercise a level of control over the
> area in which the property was found sufficient to give him
> the ability to use or dispose of the property, all right?  That
> should answer your question as best I can.

*Id.* at 29-30.  Defense counsel did not object to the court's instruction.  After additional

deliberations, the jury returned a verdict convicting Haynes of second-degree criminal

possession of a weapon and criminal possession of a firearm.  *Id.* at 31-33.

On March 23, 2016, Haynes, through counsel, moved to set aside the

verdict.  Haynes argued that the trial court's instruction that "possession" means "actual

possession or . . . [exercising] 'dominion or control'" allowed the jury to convict him on a

theory of constructive possession, which was contrary to the People's actual possession

theory and impermissibly amended the indictment.  Dkt. 6-1 at 33-39.  The trial court

denied the motion, concluding the instructions were proper.  Dkt. 7 at 21.

On April 1, 2016, Haynes was sentenced to an aggregate ten-year term of

imprisonment and seven years' post-release supervision.  Dkt. 6-1 at 14-15.  On July 11,

2016, Haynes was re-sentenced as a second violent felony offender based on his April

19, 2012 conviction for attempted second-degree criminal possession of a weapon.  His

terms of imprisonment and post-release supervision were unaltered.  Dkt. 6-3 at 45-46.

Represented by counsel, Haynes appealed to the Appellate Division,

Second Department.  Haynes raised four claims:  (1) the trial court impermissibly

suggested to the jury that it could draw an unfavorable inference against him from his

decision not to testify at trial; (2) the trial court's jury instructions on the possession

element of the crimes charged impermissibly altered the People's theory of criminal

liability from actual to constructive possession; (3) the trial court failed to inquire if his

decision not to testify was voluntary and intelligent; and (4) the *Miranda* warnings

provided to him were "incomplete and confusing."  Dkt. 6 at 7.

By decision dated July 25, 2018, the Appellate Division affirmed Haynes's

conviction.  *See Haynes I*, 77 N.Y.S.3d at 641.  The Appellate Division held that all four of

Haynes's claims were unpreserved for appellate review, *id.* (citing, *inter alia*, N.Y. Crim.

Proc. Law § 470.05(2) (contemporaneous objection rule)), and were, in any event,

without merit, *id.*  The Appellate Division elaborated only on the merits of Haynes's

"contention that the court should have inquired whether his failure to testify was intelligent and voluntary," stating that a "trial court does not have a general obligation to sua sponte ascertain if the defendant's failure to testify was a voluntary and intelligent waiver of his right." *Id.* (citation omitted) (collecting New York cases).

Leave to appeal to the New York Court of Appeals was denied on November 21, 2018. *See Haynes II*, 115 N.E.3d at 635.

**B.      Proceedings Below**

Haynes filed this habeas petition on March 29, 2019, raising the same four claims raised before the Appellate Division. *See* Dkt. 1 at 16.

*DISCUSSION*

**I.      *Federal Review of State Convictions***

A federal court may not grant a habeas petition on a claim that was adjudicated on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Harrington v. Richter*, 562 U.S. 86, 97-98 (2011); *Waiters v. Lee*, 857 F.3d 466, 477 (2d Cir. 2017). Hence, when a claim is adjudicated on the merits, the state court's decision must be accorded "substantial deference." *Fischer v. Smith*, 780 F.3d 556,

560 (2d Cir. 2015).  "A federal court may reverse a state court ruling only where it was

'so lacking in justification that there was . . . [no] possibility for fairminded

disagreement.'"  *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) (per curiam) (quoting

*Harrington*, 562 U.S. at 103); *Wetzel v. Lambert*, 565 U.S. 520, 524 (2012) (per curiam).

   Generally, "federal courts will not review questions of federal law

presented in a habeas petition when the state court's decision rests upon a state-law

ground that is independent of the federal question and adequate to support the

judgment."  *Cone v. Bell*, 556 U.S. 449, 465 (2009) (citation omitted).  That is, federal

courts may not review a state court ruling that "fairly appear[s] to rest primarily on

state procedural law," so long as the procedural bar is "adequate to support the

judgment."  *Murden v. Artuz*, 497 F.3d 178, 191-92 (2d Cir. 2007) (citations omitted).  The

Second Circuit has "held repeatedly that the contemporaneous objection rule" -- barring

state appellate courts from reviewing arguments presented for the first time on appeal

pursuant to N.Y. Crim. Proc. Law § 470.05(2) -- "is a firmly established and regularly

followed New York procedural rule."  *Downs v. Lape*, 657 F.3d 97, 103, 104 (2d Cir. 2011)

(citations omitted).  Hence, the Circuit has affirmed the denial of habeas relief based on

the Appellate Division's ruling that the failure of a petitioner to object at trial rendered a

claim unpreserved for appellate review.  *See, e.g., Garcia v. Lewis*, 188 F.3d 71, 81-82 (2d

Cir. 1999) (affirming denial of habeas relief where petitioner's trial counsel failed to

bring to trial court's attention a claim that he later attempted to advance on appeal).

There is one exception to this general rule:  A defendant's failure to object to a trial court's comments in violation of his Fifth Amendment rights does not automatically impose a procedural bar precluding federal habeas review of the constitutional claim.  *See Hawkins v. LeFevre*, 758 F.2d 866, 871 (2d Cir. 1985) ("Because New York courts refuse to enforce the contemporaneous-objection requirement where a criminal defendant seeks to exercise his privilege against self-incrimination, we conclude that [petitioner] is not procedurally barred from raising his constitutional claim." (citation omitted)).  Rather, "[i]n the case of a charge error implicating defendant's right against self-incrimination, the exception to the preservation requirement may be invoked only where the language of the charge expressly or at least unambiguously conveys to the jury that the defendant should have testified."  *People v. Autry*, 552 N.E.2d 156, 157 (N.Y. 1990) (citations omitted).

But, aside from the *Autry* exception, if a claim is procedurally barred pursuant to an independent and adequate state rule, a federal habeas court may not review it on the merits, unless the petitioner demonstrates (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law," or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Cause may be demonstrated with "a showing that the factual or legal basis for a claim was not reasonably available to counsel, . . . or that 'some interference by

officials' made compliance impracticable, . . . [or that] the procedural default is the result of ineffective assistance of counsel." *Murray v. Carrier*, 477 U.S. 478, 488 (1986) (citations omitted).  Prejudice can be demonstrated by showing "that the errors worked to [the defendant's] actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Torres v. Senkowski*, 316 F.3d 147, 152 (2d Cir. 2003) (citation and internal quotation marks omitted).

And, in the event of a fundamental miscarriage of justice, "'where a constitutional violation has probably resulted in the conviction of one who is actually innocent,' the [Supreme] Court has recognized that 'a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.'" *Dixon v. Miller*, 293 F.3d 74, 81 (2d Cir. 2002) (quoting *Murray*, 477 U.S. at 496).  "To establish actual innocence, petitioner must demonstrate that 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.'" *Id.* (quoting *Bousley v. United State*s, 523 U.S. 614, 623 (1998)).

## II.    *Analysis*

Haynes raises four claims in his habeas petition:  (1) the trial court impermissibly suggested to the jury that it could draw an adverse inference against him from his decision not to testify at trial; (2) the trial court's jury instructions on the possession element of the crimes charged impermissibly altered the People's theory of criminal liability from actual to constructive possession; (3) the trial court failed to

inquire if Haynes's decision not to testify was voluntary and intelligent; and (4) the

*Miranda* warnings provided to Haynes were inadequate, thereby rendering his post-

arrest statement inadmissible.  *See* Dkt. 1 at 16.  None of Haynes's claims provide a basis

for habeas relief -- all four are procedurally defaulted and, in any event, meritless.

### A.    Procedural Default

The Appellate Division determined that each of Haynes's four claims was

"unpreserved for appellate review."  *Haynes I*, 77 N.Y.S.3d at 641 (citing Crim. Proc. Law

§ 470.05[2] and New York cases); *see also People v. Padro*, 551 N.E.2d 1233, 1233 (N.Y.

1990) ("A post verdict motion . . . is not, by itself, ordinarily sufficient to preserve a

'question of law' within the meaning of [Crim. Proc. Law] 470.05(2) . . . for review in this

Court.").  This determination constitutes an independent and adequate state ground for

the Appellate Division's decision as to all of Haynes's claims, *see, e.g.*, *Downs*, 657 F.3d at

103, 104; *Garcia*, 188 F.3d at 81-82, except for his claim, discussed further below, that the

trial court's jury instruction as to his decision not to testify violated his Fifth

Amendment right against self-incrimination, *see Autry*, 552 N.E.2d at 157 (recognizing

exception to procedural bar rule for Fifth Amendment claims).  Thus, Haynes is not

entitled to habeas review for three of his four claims because of his procedural default,

even though the Appellate Division held that all of Haynes's claims were "in any event"

without merit.  *See Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005) ("Thus, even when a

state court says that a claim is 'not preserved for appellate review' but then rules 'in any event' on the merits, such a claim is procedurally defaulted.").

      I address first whether Haynes's Fifth Amendment claims satisfies the *Autry* exception to the state procedural bar rule, and then whether Haynes can overcome the procedural bar with respect to his defaulted habeas claims.

### 1.    The *Autry* Exception

      Haynes argues that his due process rights were violated because the trial court instructed the jury that it may draw an adverse inference from his decision not to testify.  *See* Dkt. 11 at 1-4.  As discussed above, the contemporaneous objection rule, N.Y. Crim. Proc. Law § 470.05(2), would usually bar federal habeas review of a claim not objected to before the trial court.  *See, e.g.*, *Downs*, 657 F.3d at 103, 104; *Garcia*, 188 F.3d at 81-82.  But Haynes's failure to object to the trial court's instruction regarding his decision not to testify does not preclude him from seeking federal habeas review of his Fifth Amendment claim, so long as "the language of the charge expressly or at least unambiguously convey[ed] to the jury that [he] should have testified."  *Autry*, 552 N.E.2d at 157; *Hawkins*, 758 F.2d at 871.  The trial court's charge did not do so here.

      Under New York law, "[u]pon request of a defendant who did not testify in his own behalf, but not otherwise, the court must state that the fact that he did not testify is not a factor from which any inference unfavorable to the defendant may be drawn."  N.Y. Crim. Proc. Law § 300.10(2) (McKinney); *see also* New York Criminal Jury

Instructions, CJI2d [N.Y.] Charges of General Applicability -- "Defendant Not

Testifying").  At Haynes's request, the trial court provided an instruction to the jury that

was nearly identical to the language in the statute and pattern jury instruction:  "The

defendant did not testify in this case.  I charge you that the fact that he did not testify is

not a factor you may draw any inference unfavorable to the defendant."  Dkt. 9-2 at 38.

The only difference between the statute or pattern jury instruction and the trial court's

instruction is that the trial court, without explanation and seemingly inadvertently,

omitted the phrase "from which" between "a factor" and "you may draw any inference."

        Although this omission hindered the clarity of the instruction, it did not

"expressly" or "unambiguously" convey that Haynes "should have testified."  *Autry*, 552

N.E.2d at 157.  Unlike jury charges previously deemed prejudicial -- such as a trial

court's statement that a defendant's out-of-court denial of guilt did "not take the place of

sworn testimony from [the] witness chair," *People v. McLucas*, 204 N.E.2d 846, 848 (N.Y.

1965), or a trial court's charge that "it is [the defendant's] judgment that the situation is

such that [he] elect[s] not to take the witness stand," *People v. Reid*, 522 N.Y.S.2d 657, 659

(2d Dep't 1987) -- the trial court here made no clear suggestion that Haynes should have

testified.  Indeed, "[t]he charge in substance was consistent with the intent of the statute,

was not so lengthy as to prejudicially draw the jury's attention to the issue, and did not

imply that the defendant should have testified or that his decision not to testify was a

strategic one." *People v. Maples*, 715 N.Y.S.2d 317, 317 (2d Dep't 2000).

15

Accordingly, because Haynes fails to satisfy the *Autry* exception, Haynes's Fifth Amendment claim is subject to the general rule -- like the other three claims Haynes raises in his petition -- that a failure to object at the trial court is an independent and adequate state procedural rule that bars federal habeas review of that claim.

### 2.    Overcoming the State Procedural Bar Rule

Assessing Haynes's claims does not end here, however.  Haynes may overcome the procedural bar to his four habeas claims if he demonstrates either cause for the default and actual prejudice, or that failure to consider the claims will result in a "fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750.

Haynes implies that his procedural default was the result of ineffective assistance of counsel.  *See* Dkt. 11 at 8 ("There is absolutely no representation on the record reflecting that defense counsel discussed with the defendant the issue of the defendant waiving his right to testify[.]").  Haynes, however, did not raise an ineffective assistance claim in state court, and his failure to do so then precludes him from now relying on ineffective assistance as the cause for procedural default on his habeas claims. *See Reyes v. Keane*, 118 F.3d 136, 140 (2d Cir. 1997) ("[A] petitioner may not bring an ineffective assistance claim as cause for a default when that ineffective assistance claim itself is procedurally barred.").  Thus, Haynes has failed to show cause.

Nor has Haynes demonstrated that a fundamental miscarriage of justice would take place if this Court fails to consider his claims; Haynes has not shown that

16

"in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Dixon*, 293 F.3d at 81 (citation and internal marks omitted).

Accordingly, Haynes cannot overcome the procedural bar, and thus, none of his claims are entitled to habeas review by this Court. Nonetheless, even were Haynes's claims properly before this Court, all of them lack merit. I address each in turn.

### B.      Merits

#### 1.      Jury Charge Addressing Haynes's Decision Not to Testify

Haynes's claim that his due process rights were violated because the trial court instructed the jury that it may draw an adverse inference from his decision not to testify fails on the merits. The Appellate Division's conclusion that this claim is without merit is entitled to "substantial deference," *Fischer*, 780 F.3d at 560, and is certainly a reasonable application of Federal law, *see* 28 U.S.C. § 2254(d)(1).

The Supreme Court has held that "the Fifth Amendment, in its direct application to the Federal Government and in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." *Griffin v. California*, 380 U.S. 609, 615 (1965). But not all comments regarding a criminal defendant's failure to testify rise to the level of a constitutional violation. In the case of either an improper comment by the prosecution or instruction by the court, a court

must consider whether the remark was "so prejudicial that it denied the defendant a fair, as opposed to a perfect, trial." *United States v. Rosa*, 11 F.3d 315, 343 (2d Cir. 1993) (cleaned up).  Moreover, "[w]hen we review a claim of an erroneous jury charge, 'a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.'" *Fox v. Mann*, 71 F.3d 66, 72 (2d Cir. 1995) (citation omitted).

Haynes has failed to make the requisite showing of prejudice.  The trial court, at Haynes's request, instructed the jury that it may not draw any adverse inferences from Haynes's decision not to testify, and its instruction "closely paralleled the pattern jury charge." *People v. McClenos*, 100 N.Y.S.3d 758, 760 (3d Dep't 2019) ("In any event, we perceive no deficiency in an instruction that 'closely paralleled the pattern jury charge.'" (citation omitted)).  Moreover, this instruction to the jury was presented alongside thorough recitations of the statutory elements of the crimes charged and the constitutional safeguards for the accused, such as the presumption of innocence and the People's burden of proof beyond a reasonable doubt.  *See* Dkt. 9-2 at 36-40; *Fox*, 71 F.3d at 72.  And, most importantly, this trial court's instruction in no way suggested to the jury that Haynes's failure to testify was evidence of his guilt.  Indeed, what *Griffin* specifically bars are "instructions by the court that [a defendant's] silence is evidence of guilt," 380 U.S. at 615, and the trial court's instruction here "that the fact that [Haynes] did not testify is not a factor you may draw any inference unfavorable to

[Haynes]," Dkt. 9-2 at 38, does not come close to the conduct condemned in *Griffin*. Although slightly garbled, the clear import of the language was that the jury could not draw any unfavorable inference from the fact Haynes did not testify.  Thus, Haynes cannot show that the Appellate Division's conclusion that this claim was without merit is an unreasonable application of Federal law.  *See* 28 U.S.C. § 2254(d)(1).

Accordingly, even if Haynes's claim that the jury charge violated his Fifth Amendments rights was not procedurally barred, it is meritless, and habeas relief on this claim must be denied.

### 2.    Jury Charge on the Possession Element of the Crimes

In another challenge to the jury charge, Haynes argues that the trial court improperly instructed the jury on the possession element of the crimes charged, such that the jury could find Haynes guilty under a constructive possession theory of criminal liability, even though the People's theory was based only on actual possession. Specifically, Haynes argues that by defining "possession" as "physical possession or otherwise exercise[ing] dominion or control over," Dkt. 9-3 at 5, the trial court instructed the jury that it could convict Haynes on either a theory of actual or constructive possession, depriving Haynes of a fair trial, Dkt. 11 at 14.

"A jury charge in a state trial is normally a matter of state law and is not reviewable on federal habeas corpus absent a showing that the alleged errors were so serious as to deprive defendant of a federal constitutional right." *U.S. ex rel. Smith v.*

*Montanye*, 505 F.2d 1355, 1359 (2d Cir. 1974) (citing *Cupp v. Naughten*, 414 U.S. 141, 146

(1973) ("Before a federal court may overturn a conviction resulting from a state trial in

which this instruction was used, it must be established not merely that the instruction is

undesirable, erroneous, or even 'universally condemned,' but that it violated some right

which was guaranteed . . . by the Fourteenth Amendment.")).  For an erroneous jury

instruction to support a collateral attack on the constitutional validity of a state court

judgment, a petitioner must show that "the ailing instruction by itself so infected the

entire trial that the resulting conviction violates due process."  *Cupp*, 414 U.S. at 147.  In

other words, even where error is found in a state trial court's jury instruction, the error

is harmless, unless it results in "actual prejudice" -- that is, unless the error "had

substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v.

Abrahamson*, 507 U.S. 619, 637 (1993) (citations omitted).  A petitioner must prevail

where the trial record is "so evenly balanced that a conscientious judge is in grave doubt

as to the harmlessness of the error."  *O'Neal v. McAninch*, 513 U.S. 432, 437 (1995).

Haynes has not established that the trial court's instruction on

"possession" was erroneous as a matter of state law, let alone an error of constitutional

magnitude.  *See Cupp*, 414 U.S. at 147.  A jury charge is generally proper under New

York law when it comports with the pattern jury instructions.  *See People v. Curran*, 32

N.Y.S.3d 309, 312 (2d Dep't 2016) (holding that defendant failed to show he was

prejudiced by the court's charge, which tracked language of the pattern instructions).

Here, during the jury charge, the trial court provided the pattern instructions for second- and third-degree criminal possession of a weapon and criminal possession of a firearm, each of which include the definition of "possess" as it appears in N.Y. Penal Law § 10.00(8).  *See* New York Criminal Jury Instructions, CJI2d [N.Y.] §§ 265.03(3), 265.02(5)(ii), 265.01-b(1); Dkt. 9-3 at 4-5, 9.  Thus, because the trial court's instruction comported both with the pattern jury instruction and the statutory definition of "possession," it was not erroneous.[1]

And, even if the trial court did err by instructing the jury on "dominion and control," such error was harmless because Haynes cannot show that it "had [a] substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637.  At trial, the People only argued that Haynes had actual possession of the gun; the trial court explicitly instructed the jury that the "People's theory of this case is . . . actual possession," Dkt. 9-3 at 29-30; and ample evidence supported that theory, including the testimony of Officer Collins that he observed the gun in Haynes's waistband, Dkt. 8-1 at 11, and the testimony of Detective Toussaint that Haynes

---

[1]      Moreover, the definition of "possess" in Penal Law § 10.00(8) "long has been construed as embracing constructive possession." *Nevins v. Giambruno*, 596 F. Supp. 2d 728, 738 (W.D.N.Y. 2009) (citations omitted).  Even if the People did not request a constructive possession theory of liability, the indictment gave sufficient notice to Haynes that the possession element of the charges he faced could be satisfied by proving either actual or constructive possession beyond a reasonable doubt.  "Accordingly, the trial court did not err, at least in federal constitutional terms, in submitting the constructive possession theory to the jury." *Fernandez v. Breslin*, No. 00-CV-7931, 2001 WL 197034, at *2 (S.D.N.Y. Feb. 27, 2001).

confessed he "had the gun on [him]," *id.* at 34-35.  It was defense counsel who

introduced the theory of constructive possession to the jury by arguing both in opening

and summation that the gun belonged to Lindsay, not Haynes, and was found on the

car floor, not in Haynes's waistband.  *See* Dkt. 8-8 at 20-21; Dkt. 9-2 at 14.  But no

evidence was presented to the jury in support of this constructive possession theory,

and the jury was properly instructed that the possession element of the crimes charged

includes "physical possession."  Dkt. 9-3 at 4-5, 11.  Under these circumstances, there is

nothing to suggest the jury convicted Haynes on the unsupported, constructive

possession theory of liability; the jury evidently credited the testimony of the People's

witnesses and not defense counsel's alternative version of the facts.

Accordingly, even if the trial court erred by defining "dominion and

control" for the jury, the record is not evenly balanced and the Court finds itself far from

"grave doubt," *O'Neal*, 513 U.S. at 437, as to the harmlessness of any error.  *See United

States v. Taylor*, 800 F.3d 701, 709-710 (6th Cir. 2015) (holding that it was harmless error

to give an unsupported constructive-possession instruction along with an adequately

supported actual-possession instruction); *cf. United States v. Adeniji*, 31 F.3d 58, 63 (2d

Cir. 1994) (holding that district court's error in giving jury instruction on conscious

avoidance theory of criminal liability was harmless error given "the lack of evidence of

conscious avoidance, coupled with the evidence of actual knowledge").  Haynes's

second challenge to the jury charge is also meritless, and habeas relief must be denied.

**3.      Trial Court's Failure to *Sua Sponte* Inquire into the Voluntariness of Haynes's Waiver of His Right to Testify**

Nor would Haynes be entitled to habeas relief for his claim that the trial court failed to *sua sponte* inquire about whether he knowingly and voluntarily waived his right to testify.  The Appellate Division determined this claim on the merits, providing that "'[a] trial court does not have a general obligation to sua sponte ascertain if the defendant's failure to testify was a voluntary and intelligent waiver of his right.'" *Haynes I*, 77 N.Y.S.3d at 641 (collecting New York cases).  Not only is this determination entitled to "substantial deference," *Fischer*, 780 F.3d at 560, but Haynes cannot show that it involved an unreasonable application of Federal law, *see* 28 U.S.C. § 2254(d)(1).

There is "no general obligation on the trial court to inform a defendant of the right to testify and ascertain whether the defendant wishes to waive that right." *Brown v. Artuz*, 124 F.3d 73, 79 (2d Cir. 1997) ("Just as the trial judge need not stop a defendant called by defense counsel to the stand and explain the right not to testify, the judge need not intervene when counsel announces that the defendant rests and the defendant has not testified.").  However, judicial interjection concerning a defendant's right to testify may be required in "exceptional, narrowly defined circumstances," such as "where the trial judge has reason to believe that defense counsel is frustrating the defendant's desire to testify, where the defendant has expressed his desire to testify to the court, or where 'there appears to be no rational explanation for the decision' not to testify.'" *Brown*, 124 F.3d at 79 n. 2 (first citing *United States v. Pennycooke*, 65 F.3d 9, 13

23

(3d Cir. 1995); then citing *Ortega v. O'Leary*, 843 F.2d 258, 261 (7th Cir. 1988); then citing *United States v. Ortiz*, 83 F.3d 1066, 1071 (D.C. Cir. 1996)).  When such exceptional circumstances are not present, it is "inadvisable," although permissible, for a trial judge to inquire about the voluntariness of a defendant's waiver of his right to testify.  *Id.* ("[J]udicial interference with counsel's strategic decision not to place his client on the stand 'poses a danger that the judge will appear to encourage the defendant to invoke or waive this right' even when it is unwise to do so." (citation omitted)).

Haynes's case does not present any of the "exceptional" circumstances that would trigger the need for judicial interjection.  Indeed, the state court record does not reflect that Haynes ever expressed to the trial court a desire to testify, that he was prevented from testifying by his counsel or the court, or that he did not personally decide to waive his right to testify.  Thus, the trial judge was not required to inquire *sua sponte* whether Haynes's silence at trial was the result of a knowing and voluntary decision not to testify, and the Appellate Division's conclusion to this effect was a reasonable application of Federal law.  *See* 28 U.S.C. § 2254(d)(1).

Accordingly, even if this claim provided a basis for habeas relief, it is without merit and must be denied.

### 4.    Adequacy of the *Miranda* Warnings

In his final claim for habeas relief, Haynes argues that the *Miranda* warnings read to him by Detective Toussaint were "incomplete and confusing, thereby

rendering his statement inadmissible." Dkt. 11 at 10. Even if this claim were entitled to

habeas review, it would be denied on the merits because Haynes cannot show that the

Appellate Division unreasonably applied Federal law when it held that his challenge to

the adequacy of the *Miranda* warnings was meritless. *See* 28 U.S.C. § 2254(d)(1).

In fact, the Supreme Court has "never insisted that *Miranda* warnings be

given in the exact form described in that decision." *Duckworth v. Eagan*, 492 U.S. 195,

202 (1989); *see also California v. Prysock*, 453 U.S. 355, 359 (1981) ("This Court has never

indicated that the 'rigidity' of *Miranda* extends to the precise formulation of the

warnings given a criminal defendant."). Thus, because "no talismanic incantation [i]s

required to satisfy [*Miranda*'s] strictures," *Prysock*, 453 U.S. at 359, the inquiry is whether

the warnings "reasonably convey to a suspect his rights as required by *Miranda*,"

*Duckworth*, 492 U.S. at 203 (citation and internal marks omitted).

In *Duckworth*, the Supreme Court held that the warnings read to the

defendant "touched all of the bases required by *Miranda*" where he was informed that

> he had the right to remain silent, that anything he said could
> be used against him in court, that he had the right to speak
> to an attorney before and during questioning, that he had
> 'this right to the advice and presence of a lawyer even if [he
> could] not afford to hire one,' and that he had the 'right to
> stop answering at any time until [he] talked to a lawyer.'

492 U.S. at 203. Here, the language Detective Toussaint read from the Voluntary

Disclosure Form similarly informed Haynes of his right to remain silent, his right to talk

to a lawyer before questioning, his right to have a lawyer present at any time, and his

right to have a lawyer appointed for him if he could not afford one.  *See* Dkt. 8-1 at 34.

Thus, the Voluntary Disclosure Form provided and read out loud to Haynes reasonably

conveyed to him his rights as required by *Miranda*.

Accordingly, even if Haynes's challenge to the adequacy of the warnings

were entitled to habeas review, this claim is also without merit.

## CONCLUSION

Haynes has failed to show a basis for relief under 28 U.S.C. § 2254.

Accordingly, his habeas petition is denied.  Additionally, I decline to issue a certificate

of appealability because Haynes has not made a substantial showing of the denial of a

constitutional right.  *See* 28 U.S.C. § 2253.  Pursuant to 28 U.S.C. § 1915(a)(3), I certify

that any appeal taken from this decision and order would not be taken in good faith.

The Clerk of the Court shall enter judgment accordingly and close this

case.  The Clerk shall also mail copies of this memorandum decision and the judgment

to Haynes at his last known address.

SO ORDERED.

Dated:      New York, New York
            February 15, 2023

DENNY CHIN
United States Circuit Judge
Sitting By Designation